UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MATTHEW MILLIGAN,

      Plaintiff,

v.                                    Case No: 2:20-cv-403-FtM-29MRM

KEVIN RAMBOSK, in his
official capacity as Sheriff
of Collier County, Florida,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion for Summary Judgment (Doc. #23) filed on October 26, 2021. Plaintiff filed a Response in Opposition (Doc. #32) on December 10, 2021, and defendant filed a Reply (Doc. #40) on January 3, 2022.

On June 4, 2020, Plaintiff Matthew Milligan (Plaintiff or Milligan) filed a three-count Complaint against Kevin Rambosk (Defendant, the Sheriff, or Sheriff Rambosk), in his official capacity as Sheriff of Collier County, Florida. (Doc. #1.) Plaintiff alleges that the Sheriff unlawfully discriminated against him (Count I) and failed to reasonably accommodate his disability (Count II) in violation of the American Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiff further alleges that the Sheriff engaged in unlawful discriminatory employment

practices against him (Count III) in violation of the Florida Civil Rights Act of 1992 (FCRA).  (Id., pp. 10-16.)  The Sheriff now seeks summary judgment as to all the claims.  For the reasons set forth below, the motion is denied.

**I.**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the

nonmoving party. <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999) (quoting <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." <u>Allen v. Bd. of Pub. Educ. for Bibb Cty.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The material relevant facts, viewed in the light most favorable to Plaintiff when there is a dispute (and some disputed facts) are as follows:[1] Plaintiff was born with a neurological condition – Ataxic Cerebral Palsy (ACP) – the least common form of Cerebral Palsy, which has varying degrees of impairment and symptoms among individuals. Plaintiff asserts that his ACP substantially limits his brain function, his speech, and his writing. (Doc. #32, p. 4, ¶ 1.)

---

[1] The facts accepted at the summary judgment stage of the proceedings may not be the "actual" facts of the case. <u>Harris v. Wingo</u>, 845 F. App'x 892, 896 (11th Cir. 2021). Most of the facts are taken from the Statement of Material Facts sections of the parties' respective Motion (Doc. #23) and Response (Doc. #32.)

At age fifteen, Plaintiff was diagnosed with Paroxysmal Kinesigenic Dyskinesia (PKD), a disorder characterized by periodic involuntary muscle contractions to the right side of his body, causing that side to lock up.  Plaintiff asserts that these muscle spasms typically last five seconds. (Doc. #32, p. 4, ¶ 3.)  Both parties agree that the PKD does not substantially impede Plaintiff's ability to perform any life function.  (Doc. #23, pp. 3-4, ¶ 3; Doc. #32, p. 4, ¶ 3.)  Both parties also agree that the spasms can be triggered by a number of factors, including caffeine, stress, and pressure to Plaintiff's feet, such as when he drives or walks. (Doc. #23, p. 4, ¶ 4; Doc. #32, p. 4, ¶ 4.) Plaintiff asserts that the spasms were completely controlled by medication beginning March 8, 2019. (Doc. #32, p. 4, ¶ 4.)

In late 2017, Plaintiff applied for a position as a deputy with the Collier County Sheriff's Office (CCSO), and did not request an accommodation during the application process.  (Doc. #23, p. 4, ¶ 6; Doc. #32, p. 5, ¶ 6.)  During the routine polygraph examination which was part of the application process Plaintiff experienced several spasms which caused him to be unable to complete the examination.  (Doc. #23, p. 4, ¶¶ 7-8.)  Plaintiff voluntarily withdrew his application in December 2017.  (Id. at ¶ 9.)

On October 26, 2018, Plaintiff again applied to the CCSO for a position as a certified law enforcement officer (road patrol

deputy). (Doc. #32, p. 8, ¶ 1.)  In his CCSO application, Plaintiff disclosed his ACP and PKD, but did not request any accommodation. (Doc. #23, p. 5, ¶ 11.)  During the polygraph examination Plaintiff again experienced a muscle contraction, which caused the examination to be inconclusive. (Id. at ¶ 12.) Nevertheless, in December 2018 Plaintiff received and accepted a Conditional Offer of Appointment from the CCSO. (Doc. #32, p. 8, ¶ 2.)  Plaintiff began working as a road patrol deputy on February 5, 2019. (Doc. #23, p. 5, ¶ 13.)

After accepting the employment, Plaintiff was required to complete four phases of field training while paired with a field training officer who taught and evaluated Plaintiff's performance. (Doc. #23, p. 6, ¶ 15; Doc. #32, p. 5, ¶ 15.) Plaintiff did not request any accommodations prior to his field training. (Doc. #23, p. 6, ¶ 16; Doc. #32, p. 5, ¶ 16.)  Plaintiff successfully completed phase one of his field training, and began the second phase with Corporal Michael Sweely. (Doc. #32, p. 9, ¶¶ 13-14.) On March 30, 2019, while driving a patrol vehicle and accompanied by Corporal Sweely, Plaintiff experienced an involuntary muscle spasm on his right side due to his PKD. (Doc. #23, p. 6, ¶ 17; Doc. #32, p. 9, ¶ 15.)  The details of this event are disputed: the Sheriff asserts that Corporal Sweely took control of the steering wheel, while Plaintiff maintains Corporal Sweely grabbed his arm but did not take control of the steering wheel. (Doc. #23, p. 6, ¶ 18;

Doc. #32, p. 5, ¶ 18.) In any event, Plaintiff agrees that Corporal Sweely was concerned and scared by the event. (Doc. #32, p. 5, ¶ 18.) Corporal Sweely instructed Plaintiff to pull into a parking lot for a short period of time. (Doc. #32, p. 6, ¶ 19.) Afterwards, Corporal Sweely permitted Plaintiff to drive for a short time before Corporal Sweely drove for the remainder of the day. (Doc. #23, p. 7, ¶ 20.)

Corporal Sweely documented the incident and reported it to Captain Mark Baker (Captain Baker) and Human Resources Director Darlyn Estes (Director Estes). (Id. at ¶ 21.) Plaintiff's supervisors ordered him to undergo examination by emergency medical systems (EMS), which medically cleared Plaintiff. (Id. at ¶ 20; Doc. #32, p. 6, ¶ 20.) Plaintiff was not permitted to drive himself home and was directed to take sick leave on March 31, 2019. (Doc. #32, p. 6, ¶ 22.)

On April 1, 2019, Plaintiff met with Captain Baker and Director Estes. (Id. at ¶ 22.) Plaintiff presented his version of the March 30, 2019 incident, and provided them with a medical evaluation that his treating neurologist Dr. John Osterman had performed in connection with another law enforcement position for which Plaintiff had applied in 2018. (Id.) Captain Baker and Director Estes advised Plaintiff that he would need to be evaluated by a neurologist to determine his fitness for duty, and in the

Case 2:20-cv-00403-JES-MRM   Document 41   Filed 02/24/22   Page 7 of 31 PageID 814

interim Plaintiff was temporarily assigned to crime prevention with the same pay and benefits. (Doc. #23, p. 7, ¶ 23.)

On April 5, 2019, the CCSO requested that neurologist Dr. Brian Wolff evaluate Plaintiff's fitness for duty. (Id. at ¶ 24.) Dr. Wolff was provided with Corporal Sweely's observations of the March 2019 incident, other medical documentation from Plaintiff, Plaintiff's medical questionnaire from the CCSO, and two videos of Plaintiff experiencing spasms. (Id.) The parties dispute whether Dr. Wolff was also given a job description for a CCSO road patrol deputy. (Doc. #32, p. 6, ¶ 24.) On April 30, 2019, Dr. Wolff performed an in-person fitness for duty examination of Plaintiff. (Doc. #23, p. 8, ¶ 25.) Afterwards, Dr. Wolff opined Plaintiff was not fit for duty as a police officer because of the impacts of his impairments. (Doc. #1-10, p. 3.)

On May 7, 2019, Dr. Osterman prescribed Carbatrol to control the muscle spasms.  (Doc. #23-13.)

At a May 9, 2019 meeting with Sheriff Rambosk and Director Estes, Plaintiff was reassigned from road patrol deputy and given a list of various civilian positions to choose from for a new job with CCSO. (Doc. #23, pp. 8-9, ¶ 26.) In the meantime, Plaintiff remained in crime prevention. (Id.) Although reassigned, Plaintiff remained classified as a deputy sheriff. (Id.)

Plaintiff sent a follow-up email to Sheriff Rambosk and Director Estes on May 15, 2019, stating in part that he believed

he could perform the essential functions of a road patrol deputy without reasonable accommodations, but would like to consider any reasonable accommodations in order to continue working as a road patrol deputy. (Doc. #23, p. 9, ¶ 27.) There was no response to this email by the Sheriff. (Doc. #32, p. 7, ¶ 27.)

On June 7, 2019, Plaintiff sent a second email advising Sheriff Rambosk and Director Estes that Dr. Osterman had prescribed medication ("Carbatrol") which completely controlled his PKD spasms, and providing a copy of Dr. Osterman's June 6, 2019 report. (Doc. #23, p. 9, ¶ 28; Doc. #32, p. 7, ¶ 28.) Dr. Osterman's report stated although the medication had not eliminated muscle sensations "[t]he episodes of PKD appear to be complexly controlled at this point in time with medication." (Doc. #23-9.)

The CCSO forwarded Dr. Osterman's report to Dr. Wolff for additional review. (Doc. #23, p. 9, ¶ 29.) Dr. Wolff stated in part that despite the medication, "one could not guarantee complete control, even more so if [Plaintiff] were placed in a stressful situation." (Doc. #1-12.) Dr. Wolff's opinion -- that Plaintiff's neurological impairment could place himself and others in danger while working in law enforcement and thus he was not fit for duty -- remained unchanged. (Doc. #23, pp. 9-10, ¶ 29.)

On July 18, 2019, Plaintiff was removed from his certified law enforcement position and advised he could be reevaluated by Dr. Wolff on an annual basis. (Id. at ¶ 31.)  Plaintiff was placed

in the CCSO's criminal investigations division as a civilian investigator from July 2019 until November 2019, which provided a higher hourly rate than his former deputy sheriff position. (Id. at ¶ 32.)  In November 2019, Plaintiff was assigned to the CCSO financial crimes bureau, where he remained working as a civilian investigator until March 2021, when he voluntarily resigned from the CCSO. (Id. at ¶ 33.)

Additional facts will be set forth as needed to address specific issues.

### III.

The Sheriff moves for summary judgment on all claims, arguing that Plaintiff cannot meet the elements for a prima facie claim for any of the three claims. (Docs. ##23, 40.)  Plaintiff responds that the facts supporting each claim are sufficient to survive a summary judgment motion. (Doc. #32.)

#### A. Count I and Count III – Disability Discrimination in Violation of the ADA and FCRA

Count I and Count III of the Complaint allege that the Sheriff unlawfully discriminated against Plaintiff due to his disabilities in violation of the ADA and FCRA, respectively. (Doc. #1, ¶¶ 52-58, 70-76.)  The Sheriff argues that he is entitled to summary judgment on each count because Plaintiff cannot establish a prima facie case of disability discrimination under either Act. (Doc. #23, p. 12.)

**(1)  Prima Facie Requirements**

"[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007). Accordingly, federal case law interpreting the ADA is applicable to claims arising under the FCRA. Matamoros v. Broward Sheriff's Off., 2 F.4th 1329, 1336 (11th Cir. 2021). The Court will therefore analyze Plaintiff's ADA and FCRA claims together. Holly, 492 F.3d at 1255.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination claims based on circumstantial evidence, as here, are analyzed under the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Holly, 492 F.3d at 1255-56. Plaintiff must first establish a prima facie case of discrimination under the ADA. "To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, []he (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of h[is] disability." Batson v. Salvation Army, 897 F.3d 1320, 1326 (11th Cir. 2018).

Once a plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action." Id. at 1329.  If this is done, the burden shifts back to plaintiff to show that the asserted reason is merely a pretext for discrimination because the reason is false and discrimination was the real reason.  Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006)(citations omitted.)

**(2)  Existence Of A Disability**

"The ADA defines the term 'disability' as (1) a physical or mental impairment that 'substantially limits one or more' of an individual's 'major life activities,' (2) a 'record of such an impairment,' or (3) 'being regarded as having such an impairment' as described in subsection (1)." Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) (quoting 42 U.S.C. § 12102(1)). The Sheriff asserts he is entitled to summary judgment because Plaintiff cannot establish he had a disability.  (Doc. #23, pp. 12-15.  Plaintiff responds that he meets alternatives (1) and (3) because he has physical impairments (ACP and PKD) that substantially limit one or more of his major life activities and the Sheriff regarded him as disabled due to those impairments. (Doc. #1, ¶¶ 53, 70; Doc. #32, pp. 14-16.)

**(a)   Substantially Limits One or More Major Life Activities**

The Complaint alleges that Plaintiff has physical impairments (ACP and PKD) that substantially limit one or more of his major life activities.   (Doc. #1, ¶¶ 53a.) The Sheriff argues that there is no record evidence showing Plaintiff is substantially limited in a major life activity because "Plaintiff has unequivocally maintained that his medical conditions do not substantially impact any major life function." (Doc. #23, p. 13.) Plaintiff responds that his ACP will "virtually always" meet the "actual disability" prong due to the inherent nature of the disease and its effect on brain function, and that his speech and writing are substantially limited by his impairment. (Doc. #32, p. 14.) Plaintiff also argues that both ACP and PKD "are neurological and substantially limit brain function."   (Id. at p. 15.)

Effective January 1, 2009, Congress revised and expanded the scope of "disability" when it passed the ADA Amendments Act (ADAAA).   Because the events in this case took place after the ADAAA went into effect, the Court applies the post-ADAAA version of the ADA.   Mazzeo, 746 F.3d at 1267.

As mentioned, a disability includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).   Thus, to establish a "disability" under this prong of the definition, Plaintiff must

establish (1) "a physical or mental impairment", (2) that "substantially limits", (3) "one or more major life activities."

### (i)   Physical Impairments

The first step is to determine whether Plaintiff's conditions constituted a physical impairment. <u>Bragdon v. Abbott</u>, 524 U.S. 624, 631 (1998).  It is undisputed that Plaintiff suffers from the impairments of ACP and PKD.

### (ii)   Substantially Limits

Not every impairment, however, will constitute a disability under the ADA.  29 C.F.R. § 1630.2(j).  The ADAAA provides that the term "substantially limits" "is not meant to be a demanding standard," but rather "shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).  The term "substantially limits" is "interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." § 1630.2(j)(1)(ii).  Rather, Plaintiff must be substantially limited in a major life activity "as compared to most people in the general population." <u>Munoz v. Selig Enters.</u>, 981 F.3d 1265, 1272 (11th Cir. 2020) (quoting 29 C.F.R. §

1630.2(j)(1)(ii)). Here, both ACP and PKD constitute a substantial limitation "as compared to most people in the general population."

### (iii)   Major Life Activities

"The statute [ADA] is not operative, and the definition not satisfied, unless the impairment affects a major life activity." Bragdon, 524 U.S. at 637. Under the ADAAA, major life activities are defined to

> include, but are not limited to . . . performing manual tasks, . . . walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as "the operation of a major bodily function, including but not limited to . . . neurological, [and] brain . . . functions.

42 U.S.C. § 12102(2)(B). The Sheriff cites mostly to pre-ADAAA cases to support his contention that cerebral palsy is not a *per se* disability, and that many courts have found individuals with cerebral palsy not to be disabled under the ADA. (Doc. #23, pp. 13-14; Doc. #40, pp. 1-2.)[2]

The regulations recognize that certain types of impairments will be found, in virtually all cases, to constitute a "disability" under the ADA. § 1630.2(j)(3)(ii). The regulations explain that "[g]iven their inherent nature, these types of impairments will,

---

[2] "Any pre-amendment ADA case thus applies a defunct standard for defining disability under § 12102, so a court must always assess whether the ADAAA undercuts the case's reasoning before relying on it." Felix v. Key Largo Mgmt. Corp., No. 21-10381, 2021 WL 5037570, at *2 (11th Cir. Oct. 29, 2021).

as a factual matter, virtually always be found to impose a substantial limitation on a major life activity" and therefore should demand only a "simple and straightforward" assessment. Id. For example, the regulations state that it "should easily be concluded" that ". . . cerebral palsy substantially limits brain function . . . ." § 1630.2(j)(3)(iii).

Here, Plaintiff has testified that his ACP affects his speech and his writing, in that his speech is "a little more jagged" and it takes him a lot longer to write than most people. (Doc. #23-2, p. 85.) As mentioned above, speaking and communicating are both major life functions. Viewing the evidence and reasonable inferences in a light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude that Plaintiff has ACP and PKD which substantially limits a major life activity as compared to most people in the general population. Therefore, Plaintiff has established a "disability" for summary judgment purposes.

   **(b)  "Regarded As" Disabled**

The Sheriff also asserts that there is no evidence showing that he regarded Plaintiff as disabled because (1) the CCSO had knowledge of Plaintiff's impairments before it hired him; (2) the Sheriff only removed Plaintiff from his law enforcement position based upon concern for Plaintiff's ability to safely perform his job; and (3) Defendant believed Plaintiff could perform other jobs within the agency.  (Doc. #23, pp. 14-15.)  Plaintiff responds

that the Sheriff regarded him as disabled because the Sheriff terminated Plaintiff's law enforcement position in the belief that his PKD muscle spasms or ACP made him a direct threat to safety, and therefore unqualified. (Doc. #32, pp. 15-16.)

Under the "regarded as" component of the disability definition, an individual is considered disabled if he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Lewis v. City of Union City, 934 F.3d 1169, 1181 (11th Cir. 2019) (citing 42 U.S.C. § 12102(3)(A)). Thus, "a plaintiff need demonstrate only that the employer regarded him as being impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity." Wolfe v. Postmaster Gen., 488 F. App'x 465, 468 (11th Cir. 2012).

The record evidence shows that on July 18, 2019, the Sheriff terminated Plaintiff from his employment as a certified law enforcement officer because the muscle spasms caused by Plaintiff's PKD impairment made him not fit for duty and unsafe. (Doc. #23-6, pp. 108-09.) This is sufficient to allow a reasonable jury to conclude that the Sheriff regarded Plaintiff as disabled. See, e.g., Lewis, 934 F.3d at 1182 (recognizing "the common sense principle that an employer that takes an adverse action because it fears the consequences of an employee's medical condition has

- 16 -

regarded that employee as disabled."); <u>EEOC v. Am. Tool & Mold, Inc.</u>, 21 F. Supp. 3d 1268, 1276 (M.D. Fla. 2014)(employer who terminated employee with angina because of feared safety risk to himself or others has regarded the individual as disabled).

### (3) Plaintiff As A Qualified Individual

Even if Plaintiff has a disability, the Sheriff argues that Plaintiff cannot establish that he was a "qualified individual" when he was removed from his law enforcement position. (Docs. #23, p. 15; #40, p. 3.) A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Thus, if Plaintiff is unable to perform (even with accommodation) an essential function of the road deputy position, he was not a "qualified individual" and fails to establish a prima facie case.

Additionally, an individual is not a "qualified individual" if, by performing the duties of a given position, he would pose a "direct threat" to himself or others. The ADA defines a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Regulations have extended the definition of "direct threat" to include threats to the worker himself. <u>See</u> 29 C.F.R. § 1630.2(r).  If a plaintiff cannot establish that "he was not a direct threat," then "he is not a qualified individual and

therefore cannot establish a prima facie case of discrimination."
Todd v. Fayette Cty. Sch. Dist., 998 F.3d 1203, 1221 n.9 (11th
Cir. 2021) (quoting Waddell v. Valley Forge Dental Assocs., Inc.,
276 F.3d 1275, 1280 (11th Cir. 2001)).

A "direct threat" "must be 'based on a reasonable medical
judgment that relies on the most current medical knowledge and/or
the best available objective evidence,' and upon an expressly
'individualized assessment of the individual's present ability to
safely perform the essential functions of the job,' reached after
considering, among other things, the imminence of the risk and the
severity of the harm portended." Chevron U.S.A. Inc. v. Echazabal,
536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)). See also
Lewis, 934 F.3d at 1184. This includes consideration of (1) the
duration of the risk; (2) the nature and severity of the potential
harm; (3) the likelihood that the potential harm will occur; and
(4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r);
Echazabal, 536 U.S. at 86.  An employer may not "deny an employment
opportunity to an individual with a disability merely because of
a slightly increased risk. The risk can only be considered when it
poses a significant risk, i.e., high probability, of substantial
harm; a speculative or remote risk is insufficient." EEOC v.
Browning-Ferris, Inc., 262 F. Supp. 2d 577, 587 (D. Md. 2002)
(quoting EEOC Interpretive Guidance on 29 C.F.R. § 1630.2(r)).

An employer must point to particularized facts about the specific person's condition to support its decision. A good-faith belief that a significant risk of harm exists is insufficient if it is not grounded in medical or other objective, scientific evidence. Bragdon, 524 U.S. at 649.  The key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.  Lowe v. Alabama Power Co., 244 F.3d 1305, 1308-09 (11th Cir. 2001).

The essential functions of a position "are the fundamental job duties of a position that an individual with a disability is actually required to perform." Garrison v. City of Tallahassee, 664 F. App'x 823, 826 (11th Cir. 2016) (quoting Holly, 492 F.3d at 1257). Whether a function is "essential" is determined on a case-by-case basis. Id.  The Sheriff maintains that the essential functions of a CCSO road patrol deputy include driving a patrol vehicle, apprehending suspects, and handling firearms.  (Doc. #23, p. 15.)

Here, there are conflicting medical opinions.  In June 2018 (prior to Plaintiff taking medication for his PKD spasms), Dr. Osterman opined Plaintiff could perform the duties of vigorous law enforcement, participate fully in both offensive and defensive tactics (throws, take downs, and restraint applications), and withstand force and pressure in non-lethal control techniques. (Doc. #1-8.) After Plaintiff began taking medication (Carbatrol)

for his PKD spasms on May 8, 2019, his PKD spasms were "completely controlled" and he did not experience a single spasm. (Doc. #34-12.) On June 6, 2019, Dr. Osterman examined Plaintiff and noted that he was no longer experiencing spasms and his "PKD episodes appear to be completely controlled at this point in time with medication," with no side effects from the medication. Dr. Osterman stated that in terms of Plaintiff's capacity to perform his job as a law enforcement officer, his performance to date reflected that Plaintiff has been able to overcome his disability. (Doc. #34-21, p. 2.)

Prior to Plaintiff being prescribed Carbatrol, Dr. Wolff examined Plaintiff and opined that Plaintiff had "neurological deficits" and that Plaintiff's PKD could pose a safety risk to Plaintiff and others if he experienced a spasm while driving a patrol car at a high rate of speed or tried to subdue or handcuff a criminal suspect.[3] (Doc. #1-10, p. 3.) On June 20, 2019, Dr. Wolff provided an addendum to his initial report after considering Dr. Osterman's most recent opinion that Plaintiff's PKD spasms were completely controlled.  Dr. Wolfe concluded that "one could not guarantee complete control, even moreso if Matthew were placed

---

[3] The Sheriff did not provide Dr. Wolff with a copy of Plaintiff's physician's assessment, the results of the physical agility test, or daily reports from Plaintiff's field training. (Doc. #23-6, pp. 89-90.)

in a stressful situation."   (Doc. #1-12.) Dr. Wolff's initial opinion remained unchanged.

"Because few, if any, activities in life are risk free, . . . the ADA do[es] not ask whether a risk exists, but whether it is significant." Bragdon, 524 U.S. at 649.  Based on the foregoing, a reasonable jury could conclude that by relying on Dr. Wolff's opinion the Sheriff did not make a reasonably informed and considered employment decision. A jury could find that the Sheriff's assessment of Plaintiff, based entirely on the opinion of physician who had no experience treating PKD and who only examined Plaintiff prior to receiving medication for his spasms, was not premised on the most current medical knowledge or the best available objective evidence. Dr. Wolff's opinion does not indicate if he considered whether Plaintiff (post-medication) posed a high probability of substantial harm, or whether there was a speculative, remote risk of harm.   Rather, a reasonable inference would be that Dr. Wolff reached his opinion because there was no guarantee that Plaintiff's spasms would never occur again, making Plaintiff not fit for duty.  Furthermore, the Sheriff did not seek input from any other physicians with expertise in treating PKD, nor did the Sheriff assess the credence of Plaintiff's own belief that his medication had eliminated the spasms and he was well able to perform the essential duties of a road patrol deputy.

In sum, viewing the evidence in the light most favorable to Plaintiff, material questions of fact remain as to whether Plaintiff posed a direct threat to his safety or the safety of others, and whether the Sheriff's decision to terminate his employment was based on particularized facts using the best available objective medical evidence, as required by the governing regulations. Resolving those questions will hinge on assessment of witness credibility and a weighing of the evidence, which are tasks the Court may not perform in reviewing a summary judgment motion. Buending v. Town of Redington Beach, 10 F.4th 1125, 1130 (11th Cir. 2021). Therefore, summary judgment is denied on the issue of whether, or not Plaintiff is a qualified individual.

**(4)  Unlawful Discrimination "Because of" Disability**

The final prima facie element "requires evidence sufficient to permit the fact finder to conclude that the employee was discriminated against "because of" his disability. Lewis, 934 F.3d at 1183. The evidence shows that Defendant terminated Plaintiff's employment as a certified law enforcement officer because Plaintiff's impairment made him not fit for duty and unsafe. (Doc. #23-6, pp. 108-09.) As Ms. Estes testified:

> Q. Well, you believe that because of this impairment that he was not fit for duty as a law enforcement officer, and you terminated that appointment; is it a fair statement?
>
> **A. Yes.**

(Id.)  Accordingly, Defendant is not entitled to summary judgment concerning Plaintiff's prima facie case of disability discrimination under the ADA and FCRA.

**(5)  Whether the Sheriff Had A Legitimate, Non-Discriminatory Reason For Terminating Plaintiff**

Although Plaintiff can survive summary judgment as to his prima facie case of disability discrimination, the Sheriff may be entitled to summary judgment if he "articulate[s] a legitimate, nondiscriminatory reason for the employment action." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)).

Here, the Sheriff argues he had legitimate, non-discriminatory reasons for removing Plaintiff from his certified law enforcement position, i.e., Plaintiff's PKD spasms posed a threat to himself and other CCSO deputies. (Doc. #23, pp. 18-19.) Defendant relies upon Dr. Wolff's opinion that Plaintiff suffered from ACP and PKD and that such neurological impairments made Plaintiff not fit for duty.  (Doc. #23, p. 19.) Plaintiff responds that the threat to safety justification was itself discriminatory. (Doc. #32, pp. 23-24.)  Viewing the evidence and reasonable

inferences in a light most favorable to Plaintiff, a trier of fact could rationally conclude that the Sheriff's reason for terminating Plaintiff's employment as a road patrol deputy was legitimate and non-discriminatory. Plaintiff must therefore satisfy his burden of showing the reason was a pretext for discrimination.

**(6)  Pretext**

Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated.  Reeves, 530 U.S. at 143.  To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005)(citations omitted.) This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004).  The evidence may include the previously produced evidence establishing the *prima facie* case.  Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1313 (11th Cir. 2016) (citations omitted. Plaintiff is entitled to survive summary judgment only "if there

is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Id.

Here, Plaintiff has met his burden. As discussed below, the evidence suggests that the Sheriff failed to follow proper procedure by not engaging in an interactive process to discuss reasonable accommodations for Plaintiff. A defendant's failure to follow policies or procedures may provide evidence of pretext. See Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 267 (1977) (a departure from normal procedures "might afford evidence that improper purposes [played] a role" in an employee's termination.) Thus, a reasonable jury could conclude that the Sheriff's stated safety reason was pretextual because it was not formed in compliance with the legal standard and was made without discussing reasonable accommodations with Plaintiff.

**B. Count II — Reasonable Accommodation Claim**

Count II of the Complaint alleges a reasonable accommodation claim against the Sheriff. (Doc. #1, ¶¶ 59-68.) Specifically, Plaintiff alleges that he requested reasonable accommodations from the Sheriff that would allow him to continue working in the certified law enforcement officer position, but the Sheriff failed to initiate or engage in an interactive process to discuss accommodations, failed to respond to his request, rejected his

request, and failed to offer any reasonable, effective alternative. (Id., ¶¶ 64-65.)

"An employer "discriminate[s] against a qualified individual on the basis of disability" by, inter alia, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

> To state a prima facie claim for failure to accommodate
> under the ADA, a plaintiff must show that: (1) he is
> disabled; (2) he is a qualified individual, meaning able
> to perform the essential functions of the job; and (3)
> he was discriminated against because of his disability
> by way of the defendant's failure to provide a reasonable
> accommodation.

Russell v. City of Tampa, 652 F. App'x 765, 767 (11th Cir. 2016) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).  The Sheriff argues that Plaintiff cannot establish any of the three elements. (Doc. #23, pp. 21-25.)

**(1) Disability; Qualified Individual**

With regard to the first and second elements, the Court has found that genuine issues of material fact remain as to whether Plaintiff's ACP and PKD constitute a disability and whether Plaintiff is a qualified individual pursuant to the ADA and FCRA. These findings apply equally to Count II.

**(2)  Specific Demand; Interactive Process**

Turning to the third element, "an employer's duty to provide reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." Frazier-White v. Gee, 818 F.3d 1249, 1256 (11th Cir. 2016) (quoting Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-64 (11th Cir. 1999)). Plaintiff's burden is not onerous and "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make appropriate inquiries about the possible need for an accommodation." United States v. Hialeah Hous. Auth., 418 F. App'x 872, 876 (11th Cir. 2011) (internal quotation marks omitted); see Holly, 492 F.3d at 1261 n.14[4].

---

[4] Holly cited the EEOC Compliance Manual providing examples of accommodation requests, and gave the following examples as sufficient requests for accommodation:

> Example A: An employee tells her supervisor, "I'm having trouble getting to work and my scheduled starting time because of medical treatments I'm undergoing."

> Example B: An employee tells his supervisor, "I need six weeks off to get treatment for a back problem."

> Example C: A new employee, who uses a wheelchair, informs the employer that her wheelchair cannot fit under the desk in her office. This is a request for reasonable accommodation.

The Sheriff argues that because Plaintiff did not make a direct and specific request for an accommodation, there was no failure to accommodate Plaintiff. (Doc. #23, p. 23.) The record evidence shows that on May 15, 2019, Plaintiff stated in part,

> I believe that I can perform all the functions without reasonable accommodations but I would like to consider *any reasonable accommodations* that would be an option and that would permit me to continue as a road patrol deputy. Either way, I am pleading with the agency and the Sheriff to reconsider its decision and allow me to continue as a road patrol deputy with or without reasonable accommodations.

(Doc. #34-12)(emphasis added). Plaintiff's request does not identify a specific accommodation. Given Plaintiff's request for any reasonable accommodation, a rational fact-finder could conclude that the Sheriff knew of Plaintiff's desire for an accommodation. Furthermore, the evidence demonstrates that at the time of Plaintiff's request the Sheriff had knowledge of Plaintiff's ACP and PKD, Plaintiff's PKD spasms, and had removed him from his law enforcement based on Dr. Wolff's opinion that Plaintiff's neurological deficits and PKD spams made him unfit for duty. (Doc. #1-10.) Thus, viewing the evidence and reasonable inferences in a light most favorable to Plaintiff, the Court finds there exists genuine issues of fact as to whether Plaintiff's request for an accommodation was sufficient to trigger the Sheriff's obligation to engage in the interactive process.

---

Holly, 492 F.3d at 1261 n.14.

The Sheriff further argues that Plaintiff's assertion that he failed to engage in the interactive process has no merit, and that the Sheriff cannot be liable because he considered Plaintiff's request and concluded no reasonable accommodations existed. (Doc. #23, p. 24.)  The record does not support this position.

"To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Bagwell v. Morgan Cnty. Comm'n, 676 F. App'x 863, 866 (11th Cir. 2017)(quoting 29 C.F.R. 1630.2(o)(3)).  "The interactive process begins when an employee requests an accommodation." Bralo v. Spirit Airlines, Inc., No. 13-60948-Civ, 2014 U.S. Dist. LEXIS 36042, at *47 (S.D. Fla. Mar. 19, 2014) (quoting Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005)). "[A]n employer's failure to engage in the interactive process under the ADA is actionable only if and to the extent that such failure culminates in a failure to provide reasonable accommodation." Crutcher v. Mobile Hous. Bd., No. 04-0499-WS-M, 2005 U.S. Dist. LEXIS 35402, at *63 (S.D. Ala. Oct. 20, 2005); see also Fleetwood v. Harford Systems Inc., 380 F. Supp.2d 688, 701 (D. Md. 2005) ("an employee cannot prevail simply by demonstrating that his employer failed to engage in the interactive

process; he also must show that this failure to engage in the process resulted in the failure to find an appropriate accommodation").

Absent from the record is any evidence showing that upon receiving Plaintiff's May 2019 accommodation request, the Sheriff responded in an open, interactive process to determine what, if any, reasonable accommodations could be made on Plaintiff's behalf. Director Estes testified that she concluded there were no reasonable accommodations for Plaintiff, but without engaging in a discussion with Plaintiff, or anyone else, about potential accommodations that would permit him to remain working as a road patrol deputy. (Doc. #23-2, pp. 64-66, 71.) On the other hand, Plaintiff testified that reasonable accommodations could have included him being a "second rider in a [patrol] car," working on bike patrol, or providing an interim period to monitor the efficacy of his spasm medication in preventing his PKD spasms. (Doc. #23-2, pp. 111-12.)

The Court finds that a reasonable jury could conclude that the Sheriff is liable because of a failure to respond to Plaintiff's request for an accommodation and engage in an interactive process, which culminated in a failure to provide a reasonable accommodation. See Crutcher, 2005 U.S. Dist. LEXIS 35402, at *63. Defendant's motion for summary judgment as to Count II is therefore denied.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #23) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___24th___ day of February, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record